IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**United States of America,**

   **Plaintiff/Respondent,**

v.              Case No. 03-20013-01-JWL
                 04-3378-JWL
                 04-3381-JWL

**Donald L. Johnson, Jr. ,**

   **Defendant/Petitioner.**

## MEMORANDUM & ORDER

   Donald L. Johnson, Jr. was charged in four counts of a seven-count superseding indictment with conspiracy to possess with intent to distribute crack cocaine; possession with intent to distribute 5 grams or more of crack cocaine; possession with intent to distribute 50 grams or more of crack cocaine; and being a felon in possession of a firearm. On July 14, 2003, Mr. Johnson entered a plea of guilty to all counts and a criminal forfeiture allegation. In the plea agreement executed by Mr. Johnson, he waived his right to appeal the sentence imposed or to challenge it through collateral attack. On November 3, 2003, Mr. Johnson was sentenced to a 292-month term of imprisonment and the judgment of conviction was entered on the docket that same day. Mr. Johnson did not appeal.

   On October 21, 2004, Mr. Johnson filed a pro se motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 218) in which he asks this court to vacate his sentence in light of the Supreme Court's decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). On October 25, 2004, Mr. Johnson filed another motion to vacate, set aside or correct

his sentence in which he sets forth numerous claims asserting ineffective assistance of counsel (doc. 219). As explained below, Mr. Johnson's motions are denied in their entirety.

**I.    Mr. Johnson Waived his Right to Challenge his Sentence**

The government opposes Mr. Johnson's motions on the grounds that Mr. Johnson expressly waived his right to challenge his sentence through collateral attack in the plea agreement that he executed. Mr. Johnson, in turn, asserts that the plea agreement and waiver of rights should not be enforced because he received ineffective assistance of counsel in connection with the plea agreement. The court will hold a defendant and the government to the terms of a lawful plea agreement. *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998). Thus, a knowing and voluntary waiver of § 2255 rights in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001). The Tenth Circuit has adopted a three-pronged analysis for evaluating the enforceability of such a waiver in which the court must determine: (1) whether the disputed issue falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his rights, and (3) whether enforcing the waiver would result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

*A.    Scope of the Waiver*

In determining whether the disputed issue falls within the scope of the waiver, the court

begins with the plain language of the plea agreement. *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004); *Hahn*, 359 F.3d at 1328. The provision in the plea agreement by which Mr. Johnson waived his right to challenge his sentence through collateral attack states as follows:

> Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any manner in connection with this prosecution and sentence. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)]. In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.

The plea agreement is construed "according to contract principles and what the defendant reasonably understood when he entered his plea." *Arevalo-Jimenez*, 372 F.3d at 1206 (internal quotation and citations omitted). The court strictly construes the waiver and resolves any ambiguities against the government and in favor of the defendant. *Hahn*, 359 F.3d at 1343. Bearing these principles in mind, the issues raised in Mr. Johnson's § 2255 petitions clearly fall within the scope of his waiver and he does not contend otherwise. *See, e.g., United States v. Bradley*, 400 F.3d 459, 465 (6th Cir. 2005) (rejecting defendant's argument that waiver in plea agreement was unenforceable on the basis of changes in the law, including Supreme Court's decision in *Booker*, after the bargain was struck) (and cases cited therein); *United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) (right to appeal a sentence based on *Booker* grounds can be waived in a plea agreement even if *Booker* had not been decided at the time of the

plea; broad waiver language covers those grounds of appeal).

B.    *Knowing and Voluntary*

Mr. Johnson does not contend that his waiver was not knowing and voluntary.[1]  Nonetheless, in an abundance of caution, the court briefly analyzes this aspect of the waiver.  In determining that Mr. Johnson's waiver was knowing and voluntary, the court looks no further than the language of the plea agreement and the court's Rule 11 colloquy with Mr. Johnson.  *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).  Paragraph 16 of Mr. Johnson's plea agreement expressly states that the plea was knowing and voluntary:

> The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel.  Further, the defendant acknowledges that he has read the plea agreement, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion.  The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties.  The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily.

Expressly stated in the plea agreement was the waiver where Mr. Johnson agreed to "knowingly

---

[1] Mr. Johnson does assert that his plea was "involuntary" because he agreed to plead guilty only after his counsel advised him that if he did not plead guilty, he would get a life sentence.  Mr. Johnson's decision to heed his counsel's advice does not render his plea involuntary in any respect.  *See Miles v. Dorsey*, 61 F.3d 1459, 1470-71 (10th Cir. 1995) (possibility of facing life sentence is not the sort of pressure which serves to render a guilty plea involuntary); *Osborn v. Shillinger*, 997 F.2d 1324, 1328 (10th Cir. 1993) (fact that defendant pleaded guilty to avoid the death penalty did not render his plea coerced or involuntary).

and voluntarily waive[] any right to appeal or collaterally attack any matter in connection with this prosecution and sentence." In addition, the court, during its Rule 11 colloquy with Mr. Johnson, discussed extensively the fact that Mr. Johnson had waived his right to appeal or otherwise challenge his sentence through a § 2255 motion. The court's discussion with Mr. Johnson clearly revealed that Mr. Johnson understood the nature of his waiver and voluntarily accepted it with knowledge of the consequences of the waiver.

*C.     Miscarriage of Justice*

In his motion, Mr. Johnson contends that enforcing his plea agreement and accompanying waiver of rights would result in a miscarriage of justice. Enforcing a waiver results in a miscarriage of justice only if (1) the district court relied on an impermissible factor such as race, (2) the defendant received ineffective assistance of counsel in conjunction with the negotiation of the waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Hahn*, 359 F.3d at 1327. According to Mr. Johnson, he received ineffective assistance of counsel in connection with the negotiation of the plea agreement in several respects. The constitutional right to effective assistance of counsel is defined in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain habeas relief, a petitioner must establish both that her attorney's representation was deficient, measured against an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *See id.* at 687, 688,

694.

Mr. Johnson first asserts that his counsel was ineffective because he should not have allowed Mr. Johnson to waive his rights to appeal or otherwise challenge his sentence. While it is not entirely clear from Mr. Johnson's papers, it appears that Mr. Johnson contends that his counsel should not have negotiated such a waiver because, in the absence of the waiver, Mr. Johnson would have been able to appeal or collaterally attack his sentence in light of *Blakely* or *Booker*. At the time that Mr. Johnson waived his rights, the Supreme Court had not even granted certiorari in *Blakely*, let alone decided *Blakely* or *Booker*. As the Tenth Circuit has held, "counsel's failure to foresee future developments in the law does not constitute constitutionally deficient performance." *United States v. Keeling*, 2004 WL 2712627, at *1 (10th Cir. Nov. 30, 2004) (citing *United States v. Gonzalez-Lerma*, 71 F.3d 1537, 1541-43 (10th Cir. 1995)). Thus, Mr. Johnson's counsel's negotiation of a plea agreement that included a waiver of the right to file an appeal or a § 2255 motion at a time that pre-dated both *Blakely* and *Booker* does not constitute ineffective assistance of counsel under Tenth Circuit precedent. Mr. Johnson, then, cannot satisfy the first prong of *Strickland*. Moreover, at least with respect to his waiver of the right to file a § 2255 motion, Mr. Johnson cannot demonstrate any prejudice and, thus, cannot establish the second prong of *Strickland* either. Even if Mr. Johnson's counsel had been able to negotiate a plea without a waiver of Mr. Johnson's rights (and it is highly unlikely that the government would have agreed to such a plea), Mr. Johnson nonetheless would be unsuccessful in challenging his sentence in the context of his § 2255 motion, as discussed below in section II.

Mr. Johnson also appears to argue that his counsel was ineffective because he failed to

advise Mr. Johnson that he had the right to have a jury determine the quantities of drugs for which he could be held responsible. However, he cannot show that his counsel's performance was deficient in this respect because, in fact, he had no right to have a jury determine the relevant drug quantities as his sentence did not exceed the statutory maximum. This argument, then, is rejected. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *accord United States v. Quary*, 2003 WL 256900, at *1 (10th Cir. Feb. 6, 2003) (where statutory maximum was life sentence and defendant received life sentence, factors enhancing sentence did not need to be submitted to a jury under *Apprendi*).

Mr. Johnson also argues that his counsel failed to advise him that the court would attribute additional drug quantities to Mr. Johnson and that those quantities would increase his sentence. This argument is rejected. During the court's Rule 11 colloquy with Mr. Johnson, the court asked Mr. Johnson whether he understood that the applicable guideline range could not be determined until after the presentence investigation, that the presentence investigation would not take place until after Mr. Johnson's plea of guilty had been entered, and that there was no limitation on the information that the court could consider at the time of sentencing, including information relevant to counts or charges to which Mr. Johnson did not plead guilty. Mr. Johnson answered these questions in the affirmative. Thus, it is clear that Mr. Johnson was aware of the contingencies involved in determining his sentence and nevertheless entered into a guilty plea. Moreover, Mr. Johnson's plea petition, which Mr. Johnson signed, explained that in determining the sentence to impose, the court "may take into account all relevant criminal conduct, which may include counts

7

to which I have not pled guilty or been convicted." For these reasons, the court rejects Mr. Johnson's claim that his counsel's failure to inform him that relevant conduct would be considered in sentencing Mr. Johnson constitutes ineffective assistance. *See United States v. Lyles*, 1999 WL 88968, at *2 (10th Cir. Feb. 23, 1999) (rejecting ineffective assistance claim based on counsel's misrepresentation of sentencing range; no showing of prejudice where defendant acknowledged in his plea petition that he understood sentencing would be discretionary, could differ from any calculation of the attorney, and could include other relevant conduct); *United States v. Gordon*, 4 F.3d 1567, 1569-71 (10th Cir. 1993) (rejecting defendant's ineffective assistance claim based on counsel's failure to inform defendant that relevant conduct would be considered in his sentencing; court explained during Rule 11 colloquy that, in calculating sentence, court "can and will consider all available information including factual data relating to any counts dismissed or about to be dismissed").

Mr. Johnson's remaining claims concerning his counsel's purported ineffectiveness boil down to the same argument–that Mr. Johnson's counsel should have secured him a "better plea agreement" in which, in essence, Mr. Johnson would not have had to relinquish any of his rights or make any stipulations and in which he would have received additional benefits such as a reduction for substantial assistance. The court's Rule 11 colloquy, however, belies Mr. Johnson's argument concerning a reduction for substantial assistance. Defendant's counsel clarified on the record before the court and Mr. Johnson that there was no opportunity for a downward departure based on substantial assistance because the one person that Mr. Johnson had agreed to testify against had pled guilty and the only other individuals with respect to whom the government needed

assistance from Mr. Johnson were his family members and he refused to testify against them. The government confirmed at the plea hearing that there would be no other opportunities for substantial assistance. Finally, with respect to Mr. Johnson's desire for a "better" plea agreement, the Rule 11 colloquy again reflects that Mr. Johnson's counsel was not deficient and that he, in fact, succeeded in obtaining the government's promise not to file a motion seeking enhancement under 21 U.S.C. § 851 which would have provided for a mandatory life sentence upon conviction in light of Mr. Johnson's prior drug convictions. The plea agreement that Mr. Johnson's counsel negotiated ensured that Mr. Johnson was not locked into a life sentence and, in fact, Mr. Johnson was ultimately sentenced to much less than life in prison.

For the foregoing reasons, the court concludes that there is no merit in Mr. Johnson's claim of ineffective assistance of counsel in the plea negotiation process.

## II.     Mr. Johnson's Motions Fail on the Merits

Even if the issues raised by Mr. Johnson in his § 2255 motions did fall outside the scope of his waiver or his waiver were otherwise unenforceable, his motions nonetheless fail on the merits. To the extent Mr. Johnson's motions are based on *Blakely*, the Tenth Circuit has expressly held that *Blakely* does not apply retroactively to an initial § 2255 motion. *See United States v. Price*, 400 F.3d 844, 845 (10th Cir. 2005). In so holding, the Circuit explained that *Blakely* announced a procedural rule (rather than a substantive rule) because it "'altered the range of permissible methods for determining' the appropriate length of punishment." *Id*. (quoting *Summerlin*, 124 S. Ct. at 2523). The court further held that the procedural rule announced in

*Blakely* was a "new rule" because, at the time the defendant's convictions became final (after *Apprendi* but before *Blakely*), a court would not have felt compelled to conclude that *Blakely*'s rule was constitutionally required. *Id*. at 846-48. Finally, the court held that *Blakely* does not meet any of the exceptions set forth in *Teague v. Lane*, 489 U.S. 288 (1989), that render a new procedural rule retroactive. *Id*. at 848-49 (*Blakely* did not announce a new "watershed" rule of criminal procedure). Therefore, the Circuit concluded that *Blakely* does not apply retroactively to convictions that were already final at the time the Supreme Court decided *Blakely*. *Id*. at 849. The Tenth Circuit's decision in *Price* mandates that the court deny Mr. Johnson's motion on the merits to the extent he seeks relief pursuant to *Blakely*. Mr. Johnson did not appeal his conviction or sentence and his case was "final" prior to the Supreme Court's decision in *Blakely*. Thus, *Blakely* does not apply retroactively to Mr. Johnson's § 2255 petitions and it has no bearing on Mr. Johnson's sentence.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Johnson's motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (docs. 218 and 219) are denied.

**IT IS SO ORDERED** this 11th day of April, 2005.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge

10